**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:15-cr-00028-TWP-VTW |
| | ) | |
| TERRANCE BRASHER (07), | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON DEFENDANT'S MOTION TO SUPPRESS

This matter is before the Court on Defendant Terrance Brasher's ("Brasher") Motion to Suppress Contents of Intercepted Oral and Wire Communications and Evidence Derived Therefrom. (Filing No. 587). Brasher is charged with violating 21 U.S.C. §§ 846, 841(a)(1), conspiracy to distribute controlled substances. He asserts that his Fourth Amendment rights were violated because the wiretap applications and affidavits submitted to advance the investigation of this case, which led to his arrest, did not contain a full and complete statement regarding the use or futility of less intrusive investigative procedures. Brasher also asserts that the supporting affidavits were "fraught with material misrepresentations or omissions." He requests a hearing pursuant to *Franks v. Delaware*, 438 U.S.154 (1978), to determine whether the affidavits submitted in support of the wiretap applications contained intentional or reckless misstatements or omissions of material fact regarding the necessity of the wiretaps. For the following reasons, the Motion to Suppress is **denied**.

## I.   BACKGROUND

While conducting investigations of drug trafficking activities in the area of New Albany, Indiana and Louisville, Kentucky, in April, May, and June 2015, the FBI learned of a criminal

drug enterprise involving numerous individuals. The investigation of the enterprise, referred to as the "Shelton Drug Trafficking Organization,"included among other things, the use of confidential informants and controlled drug purchases. In order to advance the investigation of the criminal enterprise's scope, purpose, and participants, the FBI applied for the issuance of wiretap orders authorizing the interception of wire, oral, and electronic communications. Brasher became known to law enforcement in the course of wire and electronic interception of a cellphone ("Target Phone 2") used by Carlos Shelton.

On August 17, 2015, the Honorable William T. Lawrence of this District issued an order authorizing the interception of communications over an AT&T cell phone registered to Jamie R. Harris of Greenville, Indiana, and used by Donnavon Harris ("Target Phone 1") for a period of thirty days (*see* 4:15-mc-003-TWP-WGH)[1]. On September 11, 2015, the undersigned issued an order authorizing the interception of communications over a Sprint cell phone registered to Carlos Shelton of Louisville, Kentucky ("Target Phone 2") for a period of thirty days (*see* 4:15-mc-004-TWP-WGH).

On October 13, 2015, the undersigned issued an order authorizing a thirty-day extension of the wiretap of Target Phone 2. On October 28, 2015, the undersigned authorized the interception of communications over an AT&T cell phone registered to Terry Martin of Louisville, Kentucky ("Target Phone 3") for a period of thirty days, and another AT&T cell phone registered to Marc Jacobs of Louisville, Kentucky ("Target Phone 7"), also for a period of thirty days (*see* 4:15-mc-006-TWP-DML). On November 12, 2015, the undersigned issued another order authorizing a second thirty-day extension of the wiretap of Target Phone 2.

---

[1] The Court has previously ordered under seal the limited unsealing of applications, affidavits and orders in miscellaneous cases 4:15-mc-003 TWP-WGH (Filing No. 8); 4:15-mc-004 TWP-WGH (Filing No. 15 and Filing No. 18); and 4:15-mc-006 TWP-DML (Filing No.9 and Filing No. 12). A protective order forbidding the copying or releasing of the wiretap materials outside the custody or control of defense counsel was also issued.

With these Court Orders and extensions, the FBI conducted several wiretaps intercepting numerous wire, oral, and electronic communications. With these intercepted communications, the FBI advanced its investigation of the criminal drug trafficking enterprise, accumulated additional evidence to support its criminal case, and made several arrests.

Based in part on the communications intercepted from the target phones, a Criminal Complaint and Affidavit were filed on December 7, 2015, naming fourteen defendants that allegedly conspired to distribute large quantities of methamphetamine and heroin. (Filing No. 1). A seven count Indictment was filed on December 15, 2015 (Filing No. 75). On May 17, 2017, a Superseding Indictment was filed narrowing the charges to one count of conspiracy to distribute controlled substances against four defendants (Filing No. 539). The final pretrial conference for this matter was held on May 24, 2017. Brasher was the sole defendant scheduled for trial by jury on June 5, 2017. On May 26, 2017, Brasher filed a 59 page Motion to Suppress. The matter is now scheduled for trial on November 13, 2017.

## II.  DISCUSSION

Brasher argues that the contents of the oral and wire interceptions and evidence derived from wiretaps of Target Phones 2, 3, and 7, and the extensions of the wiretap on Target Phone 2 should be suppressed. He asserts that the wiretap applications and affidavits do not comply with the statutory requirement of containing "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c).

Brasher further asserts the applications and affidavits have numerous material misrepresentations and omissions. Specifically, he alleges that FBI task force officer, Darin J. Vaughn ("Officer Vaughn") omitted or misrepresented information in the wiretap affidavits

concerning the investigative procedures that had or had not been utilized, which misled the Court and led to the improper issuance of the wiretap Orders. Because of these shortcomings, Brasher argues, the Government failed to meet the "necessity" requirement of Section 2518(1)(c), and thus, the authorization to conduct wiretaps should not have been granted. Brasher does not challenge the probable cause for the wiretap orders or the conduct of the wiretaps. He requests a *Franks* hearing to determine whether the affidavits submitted in support of the wiretap applications have intentional or reckless material misrepresentations or omissions regarding the necessity of the wiretaps.

## A.    There is no need for *Franks* hearing.

As an initial matter, the Court finds that there is no need for an evidentiary hearing. Where the defendant makes a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks v. Delaware*, 438 U.S. 154, 155-156 (U.S. 1978). To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. *Id*. The rationale of *Franks* also applies to intentionally or recklessly omitted material facts. *See United States v. Williams*, 737 F.2d 594, 604 (7th Cir. 1984).

To support his argument that a *Franks* hearing is required to show that the Government intentionally or recklessly misrepresented or omitted material information in the wiretap affidavits,

Brasher points to "identical" paragraphs contained in the various affidavits. He then directs the Court's attention to variations in the affidavits that, he argues, must have misled the Court. For example, he points to paragraph nine in the affidavits, which discusses the foundation for Officer Vaughn's statements in the affidavits. This paragraph notes various investigative techniques, including "covert camera surveillance."

Brasher then points to slight variations in the affidavits concerning Target Phones 1, 2, 3, and 7, as well as "video surveillance cameras" noted in the November 12, 2015 wiretap. Camera surveillance and video surveillance cameras are not discussed further in the September 11, October 13, or October 28, 2015 affidavits. He argues that the inclusion of "covert camera surveillance" in paragraph nine and "video surveillance cameras" in the November 12, 2015 wiretap must have misled the Court to believe that such techniques had been used during the entire investigation, and thus the statement is a knowingly or recklessly false statement. If such techniques actually were used during the investigation, Brasher contends their use should have been disclosed in the earlier affidavits, and failure to do so was a material omission.

Brasher also points out that the affidavits attested to the fact that Officer Vaughn did not include each and every fact known to him concerning the investigation and only included facts that Officer Vaughn thought were necessary to establish the foundation for authorization of the wiretaps. Brasher asserts that the affidavits note that "normal investigative procedures" had been tried and failed, and other investigative procedures appeared unlikely to succeed or too dangerous. He then explains that the Ninetieth Congress envisioned, "Normal investigative procedure would include, for example, . . . general questioning or interrogation under an immunity grant, use of regular search warrants, and the infiltration of conspiratorial groups by undercover agents or informants." (Filing No. 587 at 32 (citation omitted).) Again, Brasher asserts that the Court must

5

have been misled to believe that general questioning or interrogation under an immunity grant, regular search warrants, and the infiltration of conspiratorial groups by undercover agents or informants had been used in the investigation since the affidavits contained the general statement that "normal investigative procedures" had been tried and failed.

Brasher asserts similar arguments concerning the affidavits' statements regarding the futility or dangers of using undercover agents and that the Court must have been misled about the dangers of using undercover agents to investigate Brasher. In particular, he argues the Government misrepresented that no confidential informants or cooperating individuals had come forward and purposely omitted its key informants, Maycoe Ortiz and Andrew Woodrome.

Responding to the request for a *Frank's* hearing, the Government argues a hearing is unnecessary as Brasher's examples are sheer speculation that the Court was or could have been misled by slight variations among the affidavits submitted over a three-month period as the investigation progressed. Officer Vaughn's affidavits specifically noted that they were not an exhaustive list of all facts known to him. The Government asserts that an affidavit does not have to recount every single fact known to the affiant, pointing to *United States v. Alonso*, 740 F.2d 862, 868 (11th Cir. 1984) (wiretap affidavit "need not be an exhaustive recitation of the progress of the investigation"). The Government explains that the fact the earlier affidavits did not include a description of any camera surveillance does not mean that material omissions existed in those affidavits. Officer Vaughn specifically noted the limitations of the surveillance and that it would not meet the investigative goals. Thus, the Government asserts, any unintentional omissions regarding camera surveillance are not material because Officer Vaughn explained why the wiretaps were still necessary. The Government asserts that much of Brasher's argument concerning false statements in the affidavits is simply his disagreement regarding the potential

effectiveness or dangers of various investigative techniques, and he is simply offering, after the fact, hypothetical ways that the investigation could have proceeded.

In response to Brasher's argument that Officer Vaughn "intentionally and recklessly misrepresented that no confidential informants or cooperating individuals had come forward and purposely omitted their own key informants, Maycoe Ortiz and Andrew Woodrome," the Court requested the Government file *ex parte* information concerning these allegations. The Court conducted an in camera review of the Government's *ex parte* submission.[2] (Filing No. 659.)

The Court is fully satisfied that no misrepresentation or omission was made concerning Maycoe Ortiz and Andrew Woodrome and the Court was not misled or deceived by the variations among the affidavits submitted over the three-month period as the investigation progressed and revealed additional information. Brasher has presented only speculation and conclusory statements regarding the Court being misled. He bears the burden of making a substantial preliminary showing that a false statement or material omission was made knowingly, intentionally, or with reckless disregard for the truth and that the false statement was necessary to the finding of probable cause. Brasher has made no such showing, as such, his motion may be decided without a hearing.

## B. Sufficiency of Wiretap Applications and Affidavits

Title 18, United States Code, Section 2518(1)(c) requires that each application for wire surveillance "contain a full and complete statement as to one of the following: (1) whether or not other investigative procedures have been tried and failed, (2) why other investigative procedure reasonably appear to be unlikely to succeed if tried, or (3) that other investigative procedures are

---

[2] Because the *ex parte* submission (Filing No. 659) contains information regarding confidential informants, the United States requests that the Court maintain this submission and accompanying Affidavit under seal until further Order of the Court. That request is **granted**. Defendants' counsel may file a motion under Local Rule 49.1-2 or the parties may confer regarding redaction, if counsel requires a review of the *ex parte* submission.

too dangerous." *United States v. Ceballos*, 302 F.3d 679, 683 (7th Cir. 2002). This requirement is often referred to as the "necessity" requirement. Brasher asserts that the intercepted communications of Target Phones 2, 3, and 7 and the evidence derived from the communications should be suppressed because the Government failed to satisfy the necessity requirement.

Brasher argues that the affidavits used in support of the wiretap applications fail to meet the statutory requirement because the affidavits failed to provide case specific facts regarding the "normal investigative techniques" that were or could have been utilized in this investigation. He asserts that, rather than provide case specific information, Officer Vaughn provided generic, boilerplate language in his affidavits that could apply to any criminal conspiracy investigation. He contends the investigation against him began with the wiretaps, and a wiretap should not be the first resort for investigating criminal activity.

Brasher complains that the Government only used limited normal investigative techniques in the investigation, neglecting to use the full spectrum of investigative techniques available to it before implementing the more intrusive wiretaps. For example, he contends the Government undertook visual surveillance of only a few suspects in a large conspiracy, performed background checks on only some suspects, and utilized pen registers and trap-and-trace devices against a small number of co-conspirators. He asserts that the Government failed to conduct normal investigative procedures specifically directed at him, and immediately jumped from wiretap to wiretap without pausing to consider whether less intrusive investigative measures could have been implemented to accomplish its investigatory goals.

Brasher is not challenging the August 17, 2015 wiretap; rather, he argues the subsequent wiretap applications incorporated by reference and copied and pasted language from the earlier application and affidavit, and thereby failed to independently establish the necessity of additional

wiretaps as the investigation progressed. He contends the affidavits used standard language applicable to any investigation concerning visual and aural surveillance; questioning and interrogation of witnesses or participants, including the use of grand juries and the grant of immunity; use of search warrants; and infiltration of conspiratorial groups by undercover agents or confidential informants. He asserts the affidavits were insufficient because they generically claim interviews with witnesses or suspects would likely be unproductive because no single person was familiar with the entire conspiracy, interviewees would likely fear reprisals, and word of interviews might cause some suspects to flee from prosecution. Brasher further asserts the affidavits were insufficient because they baldly aver the use of the grand jury's subpoena power would cause witnesses to invoke their Fifth Amendment rights concerning any undercover agents, search warrants, pen registers, telephone toll records, trash covers, or arrest warrants. Brasher also complains that the affidavits show the Government neglected to utilize the less intrusive method of arrest warrants.

Brasher argues that the affidavits failed to explain why confidential informants were not used more extensively in this investigation and why the use of undercover agents in this case would be ineffective or too dangerous. He contends the affidavits omitted information about informants Maycoe Ortiz and Andrew Woodrome and why they could not be utilized more fully. Brasher argues that, if the affidavits had included information about Ortiz and Woodrome, the necessity for any wiretaps would have been undermined and the authorization likely would not have been given. In sum, Brasher argues that the affidavits show a lack of serious consideration of less intrusive investigative techniques, and there was no showing of particular reasons why other methods of investigation would have been inadequate against Brasher.

In response, the Government alleges several procedural defects in Brasher's arguments. The Government points out that Brasher admits he was not intercepted on Target Phone 1, was not a named interceptee on Target Phone 1, and does not seek suppression of intercepts over Target Phone 1. The Government argues, even if Brasher tried to challenge evidence from Target Phone 1, he has no standing to challenge that wiretap because only an "aggrieved person" may challenge a wiretap, 18 U.S.C. § 2518(10)(a), and an "aggrieved person" is "a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed." 18 U.S.C. § 2510(11). Because Brasher does not challenge the evidence derived from Target Phone 1, the Court declines to suppress any evidence derived from Target Phone 1.

The Government further asserts that Brasher has no standing to challenge the wiretaps and evidence derived from Target Phones 3 and 7 because he was never a party to communications intercepted over Terry Martin's phones (Target Phones 3 and 7). However, Brasher was specifically named as a "target subject" in the October 28, 2015 affidavit and application for wiretap authorization of Target Phones 3 and 7. There is conflicting case law regarding the standing of named "target subjects" or "target interceptees." *See United States v. Glover*, 174 F. Supp. 3d 431, 446–48 (D.D.C. 2016) (noting conflicting conclusions among circuits where some courts have found standing for named target of wiretap while other courts have found a lack of standing for named target where there was no actual intercepted communication); *see also*, *In re High Fructose Corn Syrup Antitrust Litig.*, 46 F. Supp. 2d 819, 822–23 (C.D. Ill. 1999) (implying that a named interceptee may have standing to challenge facial validity); *but see*, *United States v. Thompson*, 944 F.2d 1331, 1339 (7th Cir. 1991) ("interception of calls to which [defendant] was not a party did not intrude upon [defendant's] fourth amendment rights, . . . so he has no standing to seek suppression of evidence gathered from those intercepts"). The Court need not resolve this

standing issue because of its determination that the wiretap affidavits and applications were sufficient.

Next, the Government argues and the Court agrees, while Brasher may have standing to challenge the use in evidence of his own conversations and text messages intercepted over Target Phone 2, he does not have standing to seek suppression of the other evidence intercepted over Target Phone 2 to which he was not a participant. *Thompson*, 944 F.2d at 1339.

Finally, the Government notes that Brasher in multiple places in his Motion to Suppress,

> purports to argue or seek relief on behalf of co-defendant Terry Martin. This Court, however, has already accepted Martin's guilty plea. Defendant's suppression motion is signed and filed on his behalf by his attorney, but contains no signature of Martin's attorneys or any other indication that Martin has belatedly joined in defendant's motion post-plea.

([Filing No. 649 at 4](#)).  The Government contends that Brasher cannot purport to assert arguments or seek relief on behalf of his co-defendants and asks the Court to disregard or strike any such arguments and requests for relief.  The Court agrees. Brasher and his attorney do not have standing or authority to assert arguments and seek relief on behalf of co-defendant Martin, and thus, the Court will disregard any such argument and request for relief.

Turning to the substance of the Motion to Suppress, the Government asserts that each of the wiretap applications and affidavits adequately met the necessity requirement and did not contain material misrepresentations or omissions that undermined the necessity of the wiretaps. "In reviewing a challenge to the 'necessity' of a wire tap, [the Court must] apply an abuse of discretion standard, giving substantial deference to the determination of the issuing judge." *United States v. Zambrana*, 841 F.2d 1320, 1329–30 (7th Cir. 1988).  As stated earlier, federal law requires that each wiretap application contain a full and complete statement as to one of the following: (1) whether or not other investigative procedures have been tried and failed, (2) why other

investigative procedures reasonably appear to be unlikely to succeed if tried, or (3) that other investigative procedures are too dangerous. *United States v. Ceballos*, 302 F.3d 679, 683 (7th Cir. 2002). The Seventh Circuit has held that the government's burden of establishing its compliance with subsection 2518(1)(c) is not great and should be reviewed in a practical and commonsense fashion. *Id.*

The necessity requirement "should not be understood as requiring absolute necessity. It does not require that any other investigative procedure be tried first before an order is issued for the interception of wire communications or that a wiretap be used as a last resort." *United States v. Campos*, 541 F.3d 735, 746 (7th Cir. 2008) (citations and quotation marks omitted). "This provision requires only that the success of other methods of investigation appears unlikely or too dangerous." *Id.* "[T]he necessity requirement is not tantamount to an exhaustion requirement." *United States v. Lopez*, 300 F.3d 46, 52 (1st Cir. 2002).

> [T]he statute was intended to ensure not that wiretaps are used only as a last resort in an investigation, but that they were not to be routinely employed as the initial step in criminal investigation. To that end, the statute does not require that other investigative procedures actually be implemented before an order may be issued for the interception of wire communications . . . .

*Thompson*, 944 F.2d at 1340 (citation and quotation marks omitted).

The Government asserts that each of the wiretap applications and affidavits shows that some "normal" investigative techniques were implemented, the success of other investigative methods appeared to be unlikely, and yet other techniques appeared to be too dangerous. For example, the Government describes the contents of the September 11, 2015 affidavit and application concerning Target Phone 2. The papers averred facts regarding the specific investigation to date, which included information obtained from the wiretap of Target Phone 1, and discussed a criminal enterprise involving Shelton, Harris, and many other participants, as well

as the likely involvement of other unknown individuals at that time. The affidavit discussed the purpose of the investigation – to learn the scope, extent, and participants of the criminal conspiracy to distribute drugs.

The affidavit explained that previous intercepts had failed to provide details about the participants and hierarchy of the conspiracy and the relationship among the members. Previous investigation had not disclosed the scope of the drug distribution activities, the source of the drugs, and the locations for storing and distributing drugs. The affidavit further explained the prior use of confidential informants in this investigation and noted the specific limitations and impediments of continuing to use those confidential informants.

Officer Vaughn described in his affidavit the futility of recruiting new confidential informants because of the danger that such individuals might alert members of the criminal enterprise to the investigation. He further noted the reasons for not using undercover agents in the investigation—the suspects' violent criminal history and their drug use leading to possibly unpredictable and dangerous situations. He also noted that his investigation disclosed that some suspects were in possession of firearms, thereby increasing the risk of danger to undercover agents.

Officer Vaughn also described the use of phone tolls, pen registers, trap-and-trace devices, and physical surveillance in this specific investigation and noted their limitations. He explained the likelihood that other investigative methods would be unsuccessful—including grand jury subpoenas, search warrants, arrest warrants, and trash covers—and why he reasonably believed that these methods would be unsuccessful in accomplishing the goals of the investigation.

The Government explains that language which may seem to be "standard" or "boilerplate" in the affidavits is a result of the fact that each affidavit concerned the same drug trafficking activities involving the same individuals. Furthermore, the same challenges and limitations of

certain investigative techniques are in actuality applicable to most drug conspiracy cases, so similar, "standard" language may appear in affidavits in other cases. However, the Government asserts and the Court agrees, the affidavits still contained case-specific information regarding this investigation.

Concerning Brasher's claim that the Government "intentionally and recklessly misrepresented that no confidential informants or cooperating individuals had come forward and purposely omitted their own key informants, Michael Ortiz and Andrew Woodrome," ([Filing No. 587 at 7](#)), the Government's *ex parte* filing fully satisfies the Court that no misrepresentation or omission was made concerning Maycoe Ortiz and Andrew Woodrome. Additionally, a review of the wiretap applications and affidavits indicates on their face that the Government disclosed other "confidential informants or cooperating individuals had come forward," contrary to Brasher's assertion.

As noted above, the necessity requirement "does not require that any other investigative procedure be tried first before an order is issued for the interception of wire communications or that a wiretap be used as a last resort." *Campos*, 541 F.3d at 746. "This provision requires only that the success of other methods of investigation appears unlikely or too dangerous." *Id.*

This Court issued all of the wiretap orders at issue in this motion. The Court has again reviewed the wiretap applications and affidavits, and this review again confirms that the Government met its burden of satisfying the necessity requirement of 18 U.S.C. § 2518(1)(c). The Government's explanation concerning its affidavits and wiretap applications described above is accurate and sufficient. Each of the wiretap applications and affidavits specifically and adequately showed that some "normal investigative techniques" were used, the success of other investigative techniques appeared to be unlikely, and other techniques appeared to be too dangerous. This is

true of each of the affidavits and applications for Target Phones 2, 3, and 7 and the extensions on Target Phone 2. Because the necessity requirement was satisfied, Brasher's request to suppress evidence based on the necessity requirement is **denied**.

### III. CONCLUSION

For the reasons set forth above, the Court determines that there is no need to set this matter for a *Franks* hearing and **DENIES** Brasher's Motion to Suppress (Filing No. 587).

**SO ORDERED.**

Date: 8/29/2017

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

J. Clark Baird
J. CLARK BAIRD PLLC
clark@jclarkbaird.com

William Lance McCoskey
UNITED STATES ATTORNEY'S OFFICE
william.mccoskey@usdoj.gov