UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:15-cr-00028-TWP-VTW |
| | ) | |
| TERRANCE BRASHER (07), | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY DENYING DEFENDANT'S MOTION
## FOR JUDGMENT OF ACQUITTAL AND MOTION FOR NEW TRIAL

This matter is before the Court on Defendant Terrance Brasher's ("Brasher") Motion for Judgment of Acquittal (Filing No. 785) pursuant to Federal Rules of Criminal Procedure 29(c), and Motion for New Trial (Filing No. 786) pursuant to Federal Rules of Criminal Procedure 33(b)(2). Brasher was convicted by jury of Conspiracy to Distribute Controlled Substances. For the following reasons, the motions are **denied**.

### I. BACKGROUND

While conducting an investigation of drug trafficking activities in the area of New Albany, Indiana, and Louisville, Kentucky, in April, May, and June 2015, the FBI learned of a criminal drug enterprise involving numerous individuals. Agents referred to the enterprise as the "Shelton Drug Trafficking Organization". The initial investigation included, among other things, the use of confidential informants and controlled drug purchases. In order to advance the investigation of the criminal enterprise's scope, purpose, and participants, the FBI applied for and was granted the issuance of Title III wiretap orders authorizing the interception of wire, oral, and electronic communications. With these wiretap Orders, the FBI conducted several wiretaps, thereby intercepting numerous wire, oral, and electronic communications. With these intercepted

communications, the FBI advanced its investigation of the criminal drug trafficking enterprise, accumulated additional evidence to support its criminal case, and made several arrests.

On December 15, 2015, a seven-count Indictment was filed against fifteen defendants, including Brasher as defendant number 7 ([Filing No. 75](#)). Brasher was charged in Count 1, alleging that he and the co-defendants conspired to possess with the intent to distribute and distributed 500 grams or more of methamphetamine (mixture) and one kilogram or more of heroin between April 20 and December 10, 2015, in violation of 21 U.S.C. §§ 841(a)(1) and 846. *Id.* at 1.

A Superseding Indictment was filed on May 17, 2017, narrowing the charges to one count of conspiracy to distribute controlled substances against four defendants, including Brasher ([Filing No. 539](#)). Ultimately, all other defendants, including Carlos Shelton ("Shelton"), the leader of the conspiracy, entered pleas of guilty, and Brasher was the sole defendant that proceeded to trial. A four-day jury trial was held in the New Albany division courthouse, beginning on January 22, 2018. A panel of forty prospective jurors were sworn and voir dire was conducted. The Court excused seven (7) potential jurors for cause. The Government exercised four (4) peremptory strikes. The Defendant exercised five (5) peremptory strikes. A jury of twelve (12) persons and two (2) alternates was seated and sworn.

After the jury was sworn, Defendant's counsel made a motion to strike the entire panel "because there were only three African-Americans total, and two of those African-Americans out of the three were preemptively stricken by the United States." Discussion was held and the Court denied any Sixth Amendment challenge finding there was no systemic exclusion of African-Americans and the representation was fair and reasonable in relation to the number of persons in the community. Thereafter, the Court instructed counsel to provide complete presentations on the

*Batson* challenge. Discussion was held and the Court determined the Government had offered non-discriminatory reasons for striking two African-Americans from the panel.

Opening statements were made. In his opening statement, Brasher's counsel argued that his client did not reside in Indiana or conduct any drug activity in Indiana; that drugs found his client's home were found in the room of his client's nephew, a young man who was actually charged in Louisville state court with possession of those drugs; and his client did not have the intent to further Shelton's conspiracy here in Indiana, rather, Brasher had other motives in associating with Shelton.

Co-conspirators Shelton, Terry Martin ("Martin"), and Maycoe Ortiz testified against Brasher during his trial. At the close of the Government's case-in-chief, Brasher moved for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. Following argument, the Court denied the motion. Brasher presented his nephew as a witness and the Government presented rebuttal testimony. Assistant United States Attorney McCoskey presented closing argument on behalf of the Government. Brasher's counsel presented closing argument on behalf of Brasher. Assistant United States Attorney Glickman presented closing rebuttal argument on behalf of the Government. No objections were raised by Brasher during closing argument. Final instructions were read to the jury and they retired for deliberations. The jury reached a verdict and found Brasher guilty of Count 1 of the Superseding Indictment. Sentencing is scheduled for April 20, 2018.

## II. LEGAL STANDARD

### A. Federal Rule of Criminal Procedure 29

Under Rule 29,

> A judgment of acquittal is to be granted only when the evidence is insufficient to sustain a conviction. . . . [W]e view the evidence in the light most favorable to the government and ask whether any rational jury could have found the essential

3

> elements of the charged crime beyond a reasonable doubt. We will set aside a jury's guilty verdict only if the record contains no evidence, regardless of how it is weighed, from which a jury could have returned a conviction.

*United States v. Presbitero*, 569 F.3d 691, 704 (7th Cir. 2009) (citations and quotation marks omitted). "Rule 29 . . . does not require specificity when moving for a judgment of acquittal. . . . [W]hen a defendant challenges the sufficiency of the evidence by motion for judgment of acquittal and makes specific arguments in support of that motion, any arguments omitted are thereby forfeited." *United States v. Hosseini*, 679 F.3d 544, 550 (7th Cir. 2012) (citations omitted). Therefore, a general motion for judgment of acquittal is sufficient. The defendant "bears the heavy burden of demonstrating that the evidence insufficiently established [the charged offense]; in fact, that burden is best described as nearly insurmountable." *United States v. Moses*, 513 F.3d 727, 733 (7th Cir. 2008) (citation and quotation marks omitted).

B.  **Federal Rule of Criminal Procedure 33**

Under Rule 33, "[o]n the defendant's motion, a district court may grant a new trial if the interest of justice so requires. . . . A defendant is entitled to a new trial if there is a reasonable possibility that a trial error had a prejudicial effect upon the jury's verdict." *United States v. Van Eyl*, 468 F.3d 428, 436 (7th Cir. 2006) (citations and quotation marks omitted). A new trial is in the interest of justice where the substantial rights of the defendant have been jeopardized by errors or omissions during trial. *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989). The defendant must show that a new trial is justified, and the "evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *United States v. Reed*, 875 F.2d 107, 113 (7th Cir. 1989).

"A jury verdict in a criminal case is not to be overturned lightly, and therefore a Rule 33 motion is not to be granted lightly." *United States v. Santos,* 20 F.3d 280, 285 (7th Cir.1994) (quoting *United States v. Morales,* 902 F.2d 604, 605 (7th Cir.1990), *amended on other grounds,*

4

910 F.2d 467 (7th Cir.1990)). "Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." Fed.R.Crim.P. 33(b)(2). If the defendant fails to timely object at trial to the errors raised in a Rule 33 motion, the district court considers whether the alleged errors created a "plain error affecting substantial rights." *United States v. Laurenzana*, 113 F.3d 689, 695 (7th Cir. 1997).

### III. DISCUSSION

Brasher seeks post-trial relief in the form of a Motion for Judgment of Acquittal (Filing No. 785) and Motion for New Trial (Filing No. 786). The Court will address each Motion in turn.

#### A. Motion for Judgment of Acquittal

Brasher's Motion for Judgment of Acquittal is a general motion, having not provided any specificity for the Court to specifically review. Brasher explains that he "challenges the sufficiency of the evidence based on, but not limited to, all the issues that were raised and preserved at trial, as well as other issues that may arise both pre- and post-sentencing." (Filing No. 785 at 2.)

The entirety of the Government's response to Brasher's Rule 29 Motion is thus:

> At the close of the prosecution's case at trial, Brasher moved for acquittal pursuant to Rule 29. The Court denied the motion, ruling that the evidence presented was sufficient to sustain a conviction for the charged conspiracy, and that a reasonable jury could find against Brasher.
>
> Brasher's post-trial Rule 29 motion, which raises no new issues or arguments, should be summarily denied for the same reasons articulated by the Court in its ruling at trial.

(Filing No. 790 at 1.)

Sections 841(a)(1) and 846 of Title 21 of the United States Code provide, "[I]t shall be unlawful for any person knowingly or intentionally -- (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance;" and "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject

5

to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." At trial, the Government had to prove beyond a reasonable doubt that the conspiracy as charged in Count 1 of the Superseding Indictment existed, and Brasher knowingly became a member of the conspiracy with the intent to advance the conspiracy.

As pointed out by the Government, Brasher raised a Rule 29 motion for acquittal during trial, and the Court denied the motion because the evidence presented was sufficient to sustain a conviction for the charged conspiracy, and a reasonable jury could find against Brasher. Such is still the case. As noted above, a judgment of acquittal is granted only when the evidence is insufficient to sustain a conviction, and the court sets aside a jury's guilty verdict only if the record contains no evidence from which a jury could have returned a conviction. *Presbitero*, 569 F.3d at 704. Here, there is no basis to set aside the jury's guilty verdict, and the evidence is sufficient to sustain the conviction. Therefore, the Court **denies** Brasher's Motion for Judgment of Acquittal.

**B.** **Motion for New Trial**

In his Motion for New Trial, Brasher asserts various arguments as to why he believes a new trial is warranted. For the sake of ease, the Court uses Brasher's argument headings.

**1.** **Prosecutorial Misconduct During Closing Statements Violated the Defendant's Right to a Fair Trial.**

Brasher asserts that, during closing argument and rebuttal argument, the Government made statements that were unfairly prejudicial, warranting a new trial. In particular, he asserts, the Government improperly stated that the defense was "insulting the jury's intelligence," and when discussing the testimony of his nephew, "implied that the defense made claims in its opening that were false." ([Filing No. 786 at 2](Filing No. 786 at 2).) Brasher argues the Government may not make epithets or disparaging remarks about the character of a criminal defendant, the defense counsel, or a defense witness and alleges these statements were improper personal attacks on defense counsel.

6

Brasher also asserts that the Government improperly appealed to regional bias against him. He alleges the Government stated during its closing argument that the jury had more common sense than others because "they are Hoosiers." *Id.* The jury knew that Brasher was from Louisville, Kentucky, and Brasher argues that this appeal to regional bias unconstitutionally prejudiced him. Similarly, the Government raised its shared Hoosier heritage with the jury, thereby improperly attempting to raise its stature and credibility with the jury. Brasher argues that each of these statements separately and also taken together as a whole violate his constitutional right to a fair trial.

The Government first responds by pointing out that Brasher did not object to any of these statements during trial, and thus, he must show plain error. Where prosecutorial misconduct in closing argument is alleged, the Court must consider whether the challenged remarks were improper, and if so, whether, in light of the record as a whole, the defendant was deprived of a fair trial as a result of the challenged remarks. *United States v. Smith*, 674 F.3d 722, 728–29 (7th Cir. 2012). "As a general matter, improper comments during closing arguments rarely rise to the level of reversible error." *United States v. Amerson*, 185 F.3d 676, 685 (7th Cir. 1999).

The Government argues that none of the challenged statements from closing argument were improper in that prosecutors are permitted to use forceful advocacy in a closing argument. They may appeal to common sense as an approach to evaluating the evidence. Furthermore, the statements were made during the rebuttal argument in response to Brasher's closing argument that he had no connections to Indiana and knew none of the co-conspirators other than Shelton and Martin. The Government's statements also responded to Brasher's argument that the evidence came from an investigation in Kentucky, and he was not in a conspiracy with Shelton but rather was trying to rob Shelton. The statements about insulting the jury's intelligence and using Hoosier

common sense were a direct and appropriate response to the content of Brasher's closing argument, not a personal attack on defense counsel. The Government asserts that the overwhelming evidence at trial supported the conspiracy charge and that overt acts occurred in Indiana. The jury received this evidence, and in light of the overwhelming evidence, the Government's statements in rebuttal addressed the "lameness of the defense rather than defense counsel personally," and therefore were not improper. *See United States v. Washington*, 417 F.3d 780, 787 (7th Cir. 2005).

Regarding the implication that defense counsel made claims in his opening statement that were false, the Government explains that its statement was made in rebuttal when explaining that Brasher failed to prove his suggestion that drugs seized from his house belonged to his nephew. His nephew testified at trial that he did not know who owned the drugs, and he refused to admit ownership of the drugs. Thus, Brasher's opening statement was not supported by the evidence, and it is proper for a prosecutor to refer in closing argument to the defense's failure to prove what he told the jury he would prove. *See United States v. O'Brien*, 618 F.2d 1234, 1242 (7th Cir. 1980).

The Government's arguments are well-taken. None of the statements that Brasher challenges was improper. Each statement was a direct and proportional response to the statements and arguments advanced by Brasher. The statements could not have been viewed as a personal attack on the character of Brasher, his counsel, or any of the witnesses. The statement regarding Hoosiers was as follows:

> "… I would suggest to you that that presumption of innocence has been overcome. It's been overcome by the mountain of evidence, the reliable, credible evidence, that you've heard in court. There is no doubt as to what was going on. And I would ask you to use your God-given common sense, that we Hoosiers really seem to have more than most other folks, in evaluating that evidence."

The statement regarding "insulting the jury's intelligence" was as follows:

> "You tell me that in those calls between him and Carlos Shelton, that, as the defense attorney suggested to you, there's no meeting of the minds? Which telephone call indicates that there's no meeting of the minds? They talked about dope, dope, and more dope. They talked about meth, they talked about coke, they talked about heroin, they talked about selling it. To say that there was no meeting of the minds is really an insult of all of our intelligence."

The statement regarding Brasher's nephew was as follows:

> "…at the beginning of this case, at the beginning of this case, the first thing out of the chute, the criminal defense lawyer stands up and he says, in his opening statement, the drugs in the house in Louisville, Kentucky, where my client was living, belonged to my client's nephew, Corey Brasher. That's what he said. He's putting that out there in open court, just like that. Corey Brasher got up on the witness stand today and said he didn't know anything about any drugs in that house."

The Government's statement regarding Brasher's nephew accurately and appropriately responded to Brasher's argument that the drugs belonged to his nephew. When viewed in context, the statements amount to no more than passionate advocacy aimed at discrediting the arguments presented by Brasher. Each of the challenged statements was supported by evidence in the record and responded to Brasher's claims and theories. The court determines that none of the above statements were improper.

The Court also notes that even if the statements were improper, prejudice cannot be shown because the evidence was overwhelmingly in favor of a conviction. Three alleged co-conspirators testified against Brasher. Many pages of intercepted communications regarding drug activity were entered into evidence. Numerous telephone calls in which Brasher was a participant were entered into evidence and were played for the jury. The omission of the Government's few statements, which were not improper, would not have led to a different result in this case. In addition, the Court properly instructed the jury that statements and arguments from counsel did not constitute evidence. Brasher's right to a fair trial was not impinged by the few challenged statements made by the Government.

## 2. The Defendant Raised a Proper *Batson* Issue on the Jury Selection Process.

Brasher next argues that the Court erred by denying his *Batson* challenge made during trial. Brasher is African-American and he asserts that the Government's striking two of the three African-American jurors established a pattern of race-based challenges, and he was denied a jury of his peers by this constitutional violation. He notes that the Government stated it struck one African-American potential juror because her brother was charged (and acquitted) of drug conspiracy charges. He argues that none of her responses indicated that she was incapable of being a neutral and objective juror. He contends the Government's discriminatory purpose is revealed by the fact there was another juror who had a relative charged in a drug conspiracy, but that juror was not struck by the Government and he was Caucasian. Brasher also claims that the Government's entire case strategy was raced-based. He notes that the Indictment charged fifteen defendants, most of whom were Caucasian, and they were offered plea deals and the three cooperating witnesses were minorities who were based out of Kentucky.

The Government responds that Brasher has offered no legal argument or factual submission to support a new trial based on *Batson* a violation. Regarding Brasher's claim that the Government's entire case strategy was raced-based, the Government responds that this bald accusation is not supported by evidence and is factually untrue, and there is no law and no evidence to support Brasher's accusation.

As an initial matter, as the Court noted on the record, Brasher's *Batson* challenge was untimely in that he did not raise any challenges to the panel until after the jury was selected and sworn. The better practice is that counsel make a *Batson* challenge prior to empaneling the jury and dismissing the excluded panelists, because one of the remedies that *Batson* contemplates is seating the improperly excluded juror, which cannot be done after their dismissal from the

courtroom. The Court is aware that the Seventh Circuit has found that district judge's share responsibility to ensure that parties have a fair opportunity to raise such challenges; and it will not treat a challenge as forfeited if the opportunity to object was lacking. *See U.S. v. Williams* 819 F.3d 1026 (7th Cir. 2016). The Court attempted to permit opportunity for reasoned challenges by taking a break after each round of jury selection, giving attorneys time to analyze the strikes and to think carefully about the process. The Court noted its awareness that the New Albany division of the Southern District of Indiana is only 2.6 percent African-American, and *Batson* challenges are not unusual in trials conducted in this division. In the future, the Court will take the advice of now retired Judge Ann Claire Williams and before excusing the venire, will explicitly ask the parties whether they have any *Batson* challenges. *Id*. at 1029.

In any event, the Court determines that Brasher's *Batson* challenge does not warrant a new trial. To determine whether discriminatory intent influenced the exercise of a peremptory challenge, the court employs the three-part *Batson* test. *U.S. v. Stephens*, 514 F.3d 703, 710 (7th Cir. 2008); *Miller-El v. Cockrell,* 537 U.S. 322, 328-29, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) ( "*Miller-El I*") (citing *Batson,* 476 U.S. at 96-98, 106 S.Ct. 1712). The components are: first, the challenging party makes a *prima facie* showing that a peremptory challenge has been exercised on the basis of an impermissible characteristic such as race, national origin or gender; second, the opposing party offers its non-discriminatory reasons for striking the juror; and third, the trial court determines, based on the parties' submissions, whether the moving party has met his burden of proving purposeful discrimination. *Stephens* at 710.

In the first round of *voir dire* examination, the Government exercised a preemptory challenge of Ms. W, an African-American female, and in the second round, Mr. H an African-American male. The Government offered the non-discriminatory reasons that Ms. W was stricken

11

because her brother had been charged with a drug trafficking offense and Mr. H had been charged and actually convicted of two misdemeanor crimes, one of which was a drug offense. The Government noted that in the second round, it also struck a Caucasian male who had a family member who was convicted of being in a drug conspiracy. Brasher pointed out and the Government agreed, that it did not exercise a preemptory challenge on yet another panelist (who was Caucasian) who described having a family member charged in a drug offense. Having heard the parties' production of evidence in the first two steps, the Court proceeded to the third step to determine whether Brasher carried his burden of proving purposeful discrimination. "[T]he ultimate burden of persuasion ... rests with, and never shifts from, the opponent of the strike", in this case Brasher. *Stephens* 514 F.3d at 710. "The third step requires the court to weigh the evidence and determine whether the [proffered] nondiscriminatory reason for the strike is credible or if the [party opposing the strike] has shown purposeful discrimination." *Coulter v. McCann,* 484 F.3d 459, 465 (7th Cir. 2007). Credibility may be evaluated by considering the offering party's consistency in applying its non-discriminatory justification. *Id.*

The Court appropriately weighed the facts and law to Brasher's *Batson* objection and found that even if Brasher had raised a timely motion during *voir dire*, the Government had nevertheless offered valid, race-neutral reasons for exercising peremptory challenges to strike two African-American jurors from the venire. Quoting *Purkett v. Elem,* 514 U.S. 765, 767-68 (1995), and *Coulter,* 484 F.3d at 465, the Court noted "the government's explanation, does not demand an explanation that is persuasive or even plausible; but, instead, the explanation need only be nondiscriminatory. A permissible explanation can appear foolish, unwise, or even unbelievable, because the only question at stage two is whether the party has provided a nondiscriminatory reason." The Government's explanation that they exercised peremptory challenges of two

African-Americans and one Caucasian panelist based on drug arrests, charges or convictions of family members or themselves, is non-discriminatory, reasonable and credible, considering the charges before the jury. For these reasons, the Court found the Government's explanations acceptable and that the Government offered credible non-discriminatory reasons for striking both Ms. W and Mr. H.

Brasher also raised a Sixth Amendment challenge of systemic exclusion and asked the Court to strike the entire panel. The Court found there was no systemic exclusion of African-Americans and the representation was fair and reasonable in relation to the number of persons in the community. The Court explained that according to the 2015 census, the over age 18 population in the New Albany division is 2.6 percent African-American, 95.5 percent Caucasian, and 1.3 percent other. In the panel of 40 prospective venire, there were 3 African-Americans. To increase diversity of our jury pool, the Southern District of Indiana uses the Indiana voter registration list and the Indiana Supreme Court Statewide Jury List for random selection of prospective jurors.[1] The Court found that no one group was excluded from the panel, the venire was a fair cross section of the community within the New Albany division, and any underrepresentation was not due to systemic exclusion of African-Americans in the jury selection process. The record should reflect that one African-American served as a juror in Brasher's trial.

Brasher has failed to meet his burden of showing purposeful discrimination and he was not denied a jury of his peers or deprived of a fair trial because of the *voir dire* or the composition of the venire or petit jury. Likewise, Brasher's unsupported accusation that the Government's entire

---

[1] The Supreme Court List is a combination of data maintained (or collected) by: (1) the Indiana State Bureau of Motor Vehicles, consisting of Indiana residents with state-issued identification cards, driver's licenses, and vehicle registration records, excluding individuals under the age of eighteen (18) and non-U.S. citizens; and (2) the Indiana Department of Revenue, which includes all Indiana state resident taxpayers for the Southern District of Indiana. See www.insd.uscourts.gov/jury

case was discriminatory is unavailing. Accordingly, the Court **denies** Brasher's request for a new trial based on the alleged *Batson* violation.

> 3. **The Defendant was not a Member of the Conspiracy Charged in the Indictment.**

Brasher "maintains that he was not part of the conspiracy that was charged in the Indictment. The Defendant's theory that there w[ere] multiple un-related conspiracies was supported by the weight of the evidence." ([Filing No. 786 at 4](#).) Brasher asserts that the investigation began looking into the "Harris Criminal Enterprise," and after months of investigation, an entirely different conspiracy in a different federal district was discovered. The original criminal enterprise had changed into the "Shelton and Martin Criminal Enterprise," with new leaders in a new district.

Brasher further asserts that the Government's case focused on a single common conspiracy surrounding Shelton. He asserts that, while the Government did not have to prove that he knew all his co-conspirators, it had to prove that he and his co-conspirators knowingly embraced a shared criminal objective. He argues the Government should have proven he knew that he was part of a wider organization that involved more than just Shelton and himself, and there was no such evidence. Instead, he argues the evidence showed he knew only Shelton and Martin, and there was no evidence that he knew his conduct was benefiting anyone other than himself and Shelton. He argues that he simply was not part of the conspiracy charged in the Superseding Indictment.

The Government responds that Brasher's argument is a rehash of his Rule 29 motion for acquittal raised at the close of the Government's evidence in which he argued that the evidence of his membership in the charged conspiracy was insufficient to present the case to the jury. However, the Court properly rejected that argument and allowed the case to go to the jury. The Government further asserts that the appropriate forum for this argument is on direct appeal.

Brasher is essentially asking the Court to reconsider its decision on the motion for acquittal; however, there was more than enough evidence to support the jury's guilty verdict on the charge of conspiracy as described in the Superseding Indictment. There is no evidence that "preponderate[s] heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *United States v. Reed*, 875 F.2d 107, 113 (7th Cir. 1989). The jury received all the evidence, and that evidence satisfied the elements of the charged offense. The jury was properly instructed, and then following deliberation, the jury returned a verdict of guilt. Accordingly, Brasher's argument does not warrant a new trial.

**4. The Constructive Amendment of the Indictment Gives Cause for a New Trial.**

Brasher explains that he was indicted in the Superseding Indictment with conspiracy to distribute methamphetamine, cocaine, and heroin in the Southern District of Indiana. He complains that the Government, through its presentation of evidence, improperly broadened the basis of the charge in the Superseding Indictment by using evidence from a separate investigation by a different law enforcement agency in a different federal district. The Government improperly constructively amended the Superseding Indictment by presenting evidence to the jury that was "only and exclusively in regards to drugs the Defendant obtained in and sold in the Western District of Kentucky." ([Filing No. 786 at 7](#).)

In response to this argument, the Government points out that Brasher never raised this issue during trial, and thus, he must show plain error. The Government notes that the Superseding Indictment alleged that the charged conspiracy took place in the Southern District of Indiana and elsewhere. There was sufficient evidence to show that members of the conspiracy committed overt acts in the Southern District of Indiana even while other acts took place in other locations such as in the Western District of Kentucky. Furthermore, the Government presented evidence that

15

Brasher received methamphetamine that had been smuggled into the Southern District of Indiana before getting to Brasher. The jury was properly instructed regarding *Pinkerton* liability and other elements of conspiracy law and could rationally find Brasher guilty of the charged conspiracy even if he never set foot in the Southern District of Indiana, which the evidence indicated that he did.

The Superseding Indictment alleged numerous events that occurred in the Southern District of Indiana and in the Western District of Kentucky. It alleged the conspiracy occurred in the Southern District of Indiana and elsewhere. Overt acts were alleged to have happened in the Louisville, Kentucky area, Evansville, Indiana area, and other areas throughout the Southern District of Indiana ([Filing No. 539](#)). The evidence presented to the jury comported with the allegations contained in the Superseding Indictment. Contrary to Brasher's assertion, the Government's presentation of evidence did not broaden the basis of the charge in the Superseding Indictment nor did it constructively amend the Superseding Indictment. Brasher's argument has no merit and thus does not warrant a new trial.

### 5. The Government Made Arguments in Closing that Lacked a Foundation in the Proof.

Brasher next asserts that, "[i]n closing, the government made a material misstatement of fact by claiming that the Defendant sold drugs in Indiana when the United States never presented any evidence establishing such." ([Filing No. 786 at 7](#).) "The government had no foundation in the evidentiary record to imply that the Defendant went to Indiana to sell drugs. At best, this statement was pure speculation and as such was improper to present to the jury." *Id.* at 8. Brasher also argues that the Government "made other misstatements of facts regarding the purity of the drugs seized in the case. The lab reports entered into the record did not establish consistent purity levels of said drugs as the United States claimed in it's [sic] closing." *Id.* Brasher asserts these

arguments beyond the scope of the evidence presented at trial created a substantial prejudice necessitating a new trial.

In response, the Government explains,

> As to the purpose of Brasher's Indiana trip, the prosecutor's implication in closing argument was a reasonable inference that could be drawn by the jury in light of the overwhelming evidence presented that Brasher was involved in multiple drug transactions (including, but limited to, the dozens of phone calls and text messages presented to the jury along with cooperator and law enforcement testimony). This is not improper. *See United States v. Henry*, 2 F.3d 792, 795 (7th Cir. 1992); *United States v. Garza*, 608 F.2d 659, 663 (5th Cir. 1979). But even if the Court found that the statement was somehow improper, it would not justify the granting of a new trial in light of the overwhelming evidence of Brasher's guilt. *See United States v. McClinton*, 135 F.3d 1178, 1189 (7th Cir. 1998) (holding that the prosecutor's "blunt assertions of facts not in evidence in his closing argument" were not reversible error in light of the overwhelming evidence of defendant's guilt).

(Filing No. 790 at 10.)

The Government also notes that it does not recall making any statements regarding drug purity, and if any statements were made about drug purity that were inconsistent with what was stipulated and read into the record, such statements were unintentional. Additionally, Brasher has only baldly claimed prejudice, but he has done nothing to explain how any statement about drug purity was prejudicial, and he has not met his burden of showing any prejudice in light of the overwhelming evidence that supported the conviction. The Government argues that Brasher's argument fails for the same reasons as his prosecutorial misconduct argument.

The Court finds that Brasher has failed to establish a violation of his due process rights such that a new trial is warranted. First, it is questionable whether material misstatements of fact were made in closing arguments. The Government's implication regarding Brasher's trip to Indiana was reasonable and proper in light of all the evidence in the record. There were numerous telephone calls and text messages in which Brasher was a participant that concerned multiple drug transactions. Testimony from law enforcement and co-conspirators supported the argument that

Brasher was involved in numerous drug trafficking activities. Therefore, it was not improper for the Government to imply that Brasher's trip to Indiana was related to drug activity, and the jury could have reasonably deduced the same. Reasonable inferences are permitted so long as they are based on the evidence, and the jury was instructed on this point. Furthermore, Brasher has failed to show how he was prejudiced in any way by the Government's implication, let alone how it affected any substantial rights whereby he would be entitled to a new trial.

Likewise, Brasher has failed to show how he was prejudiced in any way by any statements regarding drug purity. The evidence against Brasher was overwhelmingly in favor of a conviction, and any alleged statement about the purity of the drugs would not have changed the outcome of the trial. Brasher's arguments do not support granting a new trial.

### 6. The Court had Personal Knowledge Creating a Disqualification.

Lastly, Brasher argues that 28 U.S.C. § 455(b)(1) requires a judge to disqualify herself where she has personal knowledge of disputed evidentiary facts concerning the proceeding. Brasher acknowledges that the Seventh Circuit has explained § 455 is primarily concerned with knowledge gained "outside a courthouse." *See Edgar v. K.L.*, 93 F.3d 256, 259 (7th Cir. 1996). Brasher asserts that "the Court was privy to statements of facts and opinion by the agents of the government in the application for the Title III wire taps. Because this information was presented to the Court under seal, then it was not information that was readily available to the public." (Filing No. 786 at 8.) Brasher claims that a common cause for recusal is a judge's review of her own prior decisions. He explains that he moved to suppress evidence derived from the wiretap Orders from this Court, whereby the Court was asked to review its own prior decisions, but the motion was denied and was detrimental to his case.

The Government responds that this argument is far too late—more than two years after the issuance of the wiretap Orders, more than six months after the Court denied the motion to suppress, and weeks following the four-day jury trial that resulted in a guilty verdict. The Government points out that Brasher failed to even explain how the Court's familiarity with the wiretap Orders and the denial of the motion to suppress entitles him to a new trial. There is no evidence that the Court had any personal bias or prejudice against Brasher. Unfavorable prior judicial rulings do not show a personal bias against a party. When a party does not like a court's decision, the party should appeal, not seek recusal. The Government also points out that "judges often learn information about a defendant before trial which does not require automatic disqualification of the judge." *United States v. Bunch*, 730 F.2d 517, 519 (7th Cir. 1984). There are no grounds for recusal in this case based on the ordinary pretrial motions practice that informed the Court of Brasher's background. The Government asserts that there is no evidence to support a claim of bias, and furthermore, any such argument should have been made before the Court was asked to rule on the motion to suppress or before trial.

The Court finds that the Government's argument is well-taken. There is no evidence of any personal bias or prejudice on the part of the Court against any party, and no such evidence has been presented. The Seventh Circuit has unequivocally explained that unfavorable decisions against a party, and even a pattern of unfavorable decisions, is not sufficient to support a claim of judicial bias requiring recusal. *United States v. White*, 582 F.3d 787, 807 (7th Cir. 2009) ("neither judicial rulings nor opinions formed by the judge as a result of current or prior proceedings constitute a basis for recusal unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible"); *McLaughlin v. Union Oil Co.*, 869 F.2d 1039, 1047 (7th Cir. 1989). Contrary to Brasher's claim that a common cause for recusal is a judge's review of her

own prior decisions, judges are routinely asked to reconsider their own orders and decisions under the rules of procedure. This final argument does not warrant a new trial.

### IV. CONCLUSION

For the reasons set forth above, the Court **DENIES** Brasher's Motion for Judgment of Acquittal ([Filing No. 785](#)) and Motion for New Trial ([Filing No. 786](#)). This matter remains set for sentencing on Friday, April 20, 2018, at 1:30 p.m. in Courtroom 200, Lee H. Hamilton Federal Building and U.S. Courthouse, 121 West Spring Street, New Albany, Indiana.

**SO ORDERED.**

Date: 4/11/2018

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

J. Clark Baird
J. CLARK BAIRD PLLC
clark@jclarkbaird.com

John L. Tompkins
BROWN TOMPKINS LORY & MASTRIAN
johnltom@mac.com

William Lance McCoskey
UNITED STATES ATTORNEY'S OFFICE
william.mccoskey@usdoj.gov

Barry D. Glickman
UNITED STATES ATTORNEY'S OFFICE
barry.glickman@usdoj.gov